1

2

3

4

5

6

7                        **UNITED STATES DISTRICT COURT**

8                       **EASTERN DISTRICT OF CALIFORNIA**

9

10

11  ANTHONY BURCIAGA,                    Case No. 1:12-cv-00258-LJO-SKO-HC

12          Petitioner,                  FINDINGS AND RECOMMENDATIONS TO
                                         DENY THE FIRST AMENDED PETITION FOR
13      v.                               WRIT OF HABEAS CORPUS AND TO ENTER
                                         JUDGMENT FOR RESPONDENT (DOC. 22)
14
                                         FINDINGS AND RECOMMENDATIONS TO
15  MARTIN D. BITER, Warden,             DECLINE TO ISSUE A CERTIFICATE OF
                                         APPEALABILITY
16          Respondent.
                                         **OBJECTIONS DEADLINE:**
17                                       **THIRTY (30) DAYS**

18

19        Petitioner is a state prisoner proceeding pro se and in forma

20  pauperis with a petition for writ of habeas corpus pursuant to 28

21  U.S.C. § 2254.  The matter has been referred to the Magistrate Judge

22  pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 303.

23  Pending before the Court is the first amended petition (FAP), which

24  was filed on January 28, 2013.  Respondent filed an answer on May 2,

25  2013, and Petitioner filed a traverse on August 22, 2013.

26        I.  Jurisdiction

27        Because the petition was filed after April 24, 1996, the

28  effective date of the Antiterrorism and Effective Death Penalty Act

                                         1

of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v.</u> <u>Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Madera (MCSC), located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court concludes it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v.</u> <u>Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Martin D. Biter, who had custody of Petitioner at Petitioner's institution of confinement at the time the FAP was filed.  (Doc. 29.)  Petitioner thus named as a respondent a person who has custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). <u>See</u> <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  Accordingly, the Court concludes that it has jurisdiction over the person of Respondent.

II.  <u>Background</u>

A jury convicted Petitioner of the first degree murder of

2

Theodore Betts.  The jury also found that the murder was committed in the course of a robbery and that Petitioner personally and intentionally used a firearm.

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the Court of Appeal of the State of California, Fifth Appellate District (CCA) in People v. Anthony Burciaga, case number F057834, filed on November 4, 2010.

FACTUAL AND PROCEDURAL SUMMARY

Gabriel Martin and Theodore Betts lived together in a remote location in Madera County. Martin and Betts grew marijuana and stored a large amount of marijuana on their property. On the morning of March 21, 2005, Martin and Betts were at home when Martin heard a car driving up their driveway and heard their dogs barking.

Martin stepped outside the house and walked up the driveway. Martin saw a blue SUV stopped in the driveway. The driver of the SUV, Marissa Rubianes, asked if there were any properties in the area for sale or rent. Martin told Rubianes he did not know of any such properties and asked her to turn around and leave.

At that point, Burciaga and another man, Rudy Castillo, came out from around the back of the SUV. Burciaga had a shotgun; Castillo had a handgun. Burciaga told Martin to keep the dogs away from him; Burciaga then pointed the shotgun in Martin's direction and threatened to shoot the dogs. Burciaga ordered Martin to walk back toward the

3

house. Martin complied, with Burciaga following and pointing the shotgun at him. When Martin got to the stairs outside the house, he saw Betts in the doorway of the house pointing a shotgun. Betts yelled at Martin to get another gun; Martin stepped inside to comply. Betts stepped outside. As Martin was reaching for a rifle in the house, he heard a shotgun blast. The shotgun blast came from near the door where Betts was standing.

Martin went to exit the house just as Betts was coming in the door. Betts was bleeding and exclaimed, "He hit me. He hit me. They got me. They got my arm." Martin went outside, did not see anyone, and fired his rifle at a nearby hill to let the intruders know he had a weapon.

Martin called 911. He told the 911 operator that Burciaga and his companions had tried to rob Betts. Martin tried to administer first aid. Although law enforcement and paramedics arrived, Betts died shortly after their arrival. Betts bled to death from shotgun wounds to his left shoulder and underarm area.

Deputy Roy Broomfield received a sheriff's radio broadcast about the shooting. He immediately started driving toward the Betts residence. About a half mile from the house he spotted Burciaga and Anthony Mendez. They matched the description of perpetrators issued over the radio. They seemed out of breath, in a hurry, and their pant legs were wet and muddy. Burciaga had cuts on his chin. Broomfield handcuffed the two men and placed them in the back of his patrol car.

A short distance from where Broomfield had encountered Burciaga and Mendez, Broomfield saw shoe prints on the side of a hill. Broomfield showed the shoe prints to Sergeant Charles Bump, who tracked the shoe prints back to Martin and Betts's property. There were two sets of prints-one had a herringbone pattern and the other a flame pattern.

Along the trail of shoe prints, law enforcement found a 12-gauge shotgun with no stock; there were four shells in the shotgun. The shotgun was lying on top of fresh grass. They also found the handgun, a New England .32-caliber revolver.

4

Near the southeast corner of Martin and Betts's house, law enforcement found a herringbone pattern shoe print and a 12-gauge shotgun shell casing in close proximity to each other. The shell casing was about 10 feet from the southeast corner of the house; the shoe print was about a foot from the shell casing. The herringbone shoe print at the house was very similar to the shoe print that Bump had been tracking.

The herringbone shoe prints were similar in pattern and size to Burciaga's shoes; the flame print matched Mendez's shoes. Law enforcement concluded that Burciaga made the herringbone shoe print impressions. The shotgun shell casing found outside Betts's home was fired from the shotgun found along the shoe print trail.

Codefendant Rubianes testified that after the robbery attempt, she found masks and bullets in the SUV. She claimed she did not know Burciaga and Mendez were planning to rob the victims; she thought they were going to buy marijuana.

    Interviews of Burciaga

Burciaga was interviewed by Detectives John Grayson and Jerry Saldivar at around 1:25 p.m. on March 21, 2005. A tape of the interview was played for the jury. Burciaga claimed he was set up. Burciaga admitted, however, there was a plan to take marijuana from Martin and Betts. Burciaga was told the victims had a lot of marijuana and to look for a cave where the marijuana was hidden. Burciaga stated he was not planning to hurt anyone.

According to Burciaga, the plan had been developed by "Juetto." Burciaga owed money to Juetto; Burciaga was to take the marijuana in order to pay his debt to Juetto. Burciaga admitted that he and the others with him did not go to Martin and Betts's property to buy a small amount of marijuana. Burciaga and his cousin, Mendez, were both in on the plan.

When they got to Martin and Betts's property, one of the owners (Martin) met them and the other (Betts) came out of the house and started shooting. Burciaga shot back and, when his gun recoiled, it hit him and cut his chin. Burciaga ran from the property and met up with Mendez. Burciaga discarded his 12-gauge shotgun in the woods. He

and Mendez walked out to a dirt road, where they
encountered an officer.

Grayson told Burciaga that Betts was dead and Burciaga
responded, "No way." Burciaga stated he did not try to
kill anyone. He was sorry about what had happened.

Burciaga was interviewed for a second time on March 21
commencing around 5:25 p.m. by Detectives Grayson and
Saldivar. The jury heard a tape of this interview.
Burciaga reiterated that he was in debt to a man and he
had agreed to the crime in order to pay his debt to the
man. Burciaga also claimed he had told his coconspirators
he did not want anyone to die.

Burciaga was told the marijuana would be at property
occupied by two old men. Burciaga was told by a man named
"Bob" the specific locations on the property where
Burciaga could find the marijuana, an RV, the basement,
and a cave. Burciaga had visited the property about nine
months before the crime. On the day of the crime, Burciaga
brought a taser and a handgun; someone else supplied the
shotgun.

Burciaga denied shooting Betts, but claimed that Betts
came out of the house "blasting." Burciaga also claimed
that he shot to scare to Betts, not to kill him. Later,
Burciaga claimed that he had killed someone for nothing.
Burciaga claimed that Bob was Betts's son-in-law and Bob
wanted Betts killed so he could inherit. Law enforcement
was not able to locate "Bob."

Burciaga and codefendants Mendez, Rubianes, and Castillo
were charged with one count of first degree murder. It
also was alleged that the murder was committed in the
course of a robbery. It also was alleged that Burciaga
personally and intentionally discharged a firearm. On
March 25, 2008, the trial of Burciaga and Rubianes was
severed from the trial of Mendez and Castillo.

People v. Burciaga, no. F057834, 2010 WL 4355509, at 1-3 (Nov. 4,
2010).

III.   Suppression of the Fruits of Petitioner's Arrest

Petitioner argues that the state court unreasonably applied
federal law and made unreasonable determinations of fact when it

6

denied his claim that his arrest was made without probable cause, and thus the state court should have excluded as fruits of the unlawful arrest the shoe prints, Petitioner's statements to the investigating officers, and officers' conclusions regarding the evidence.  (FAP, doc. 22, 9.)

Where the state has provided the petitioner with an opportunity for full and fair litigation of a Fourth Amendment claim, the petitioner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial.  Stone v. Powell, 428 U.S. 465, 494 (1976).

In Stone, the Court did not set forth a test for determining whether a state has provided an opportunity for full and fair litigation of a claim.  However, in a footnote the Court cited Townsend v. Sain, 372 U.S. 293 (1963), which held that a federal court must grant a habeas petitioner an evidentiary hearing if 1) the merits of the factual dispute were not resolved in the state hearing; 2) the state factual determination is not fairly supported by the record as a whole; 3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; 4) there is a substantial allegation of newly discovered evidence; 5) the material facts were not adequately developed at the state court hearing; or 6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  Stone v. Powell, 428 U.S. at 494 n.36 (citing Townsend v. Sain, 372 U.S. at 313).  Other factors include the extent to which the claims were briefed before, and considered by, the state trial and appellate courts.  Terrovona v. Kincheloe, 912 F.2d 1176, 1178-

7

79 (9th Cir. 1990). Even though a petitioner may contend the state court's factual findings concerning a search are not supported by the evidence, a petitioner has nevertheless been provided a full and fair opportunity to litigate his search claim where the validity of the search was raised in a pre-trial motion, the trial court held a hearing on the issue at which the petitioner was permitted to present evidence and examine witnesses, the trial court made a factual finding, and there was judicial review of the trial court's decision. Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005).

Here, Petitioner filed a pretrial motion to suppress based on the preliminary hearing transcript. (LD[1] 1 at 14.) Petitioner argued there was no probable cause for his prolonged detention/arrest, and that all evidence resulting from the arrest should be suppressed. (Id. at 14-15.) At an evidentiary hearing on the suppression motion, Petitioner's counsel examined witnesses and presented argument. (LD 1 at 16-21; LD 2 at 5-6.) The trial court ruled there was probable cause for the arrest and detailed the reasons for that conclusion. (LD 2 at 6.) On direct appeal, Petitioner claimed there was no probable cause for his arrest. (LD 1, Applt.'s Op. Brf., 14-48.) The CCA considered and rejected this claim. (LD 2, 6-13.)

In summary, Petitioner fully briefed and presented his claim with the assistance of counsel. His claim was the subject of a hearing at which the facts were fully developed in the course of testimony and cross-examination. The trial court determined the claim on the merits, and the facts fairly support the denial of the motion to suppress. Petitioner appealed the judgment and had the

---

[1] "LD" refers to documents lodged by Respondent.

opportunity to raise before the CCA and the Supreme Court of California (CSC) the trial court's denial of the motion to suppress and the introduction of the fruits of the search.  (LD 4-9.)  The circumstances of Petitioner's opportunity to litigate his search claim are analogous to those of the petitioner in Moormann v. Schriro, 426 F.3d 1044.

The Court concludes that Petitioner was afforded a full and fair opportunity to litigate his claim concerning the Fourth Amendment.  Therefore, he cannot receive habeas corpus relief in this proceeding pursuant to 28 U.S.C. § 2254.  It will, therefore, be recommended that Petitioner's Fourth Amendment claim concerning probable cause for his arrest be denied.

IV.  Unreasonably Prolonged Detention

Petitioner alleges that his detention of three or four hours was unreasonably prolonged.  This claim was raised and rejected in the state appeal (LD 1, Applt.'s Op. Brf., 33-38; LD 2, 6-13), and is also subject to the bar of Stone v. Powell.

Petitioner is not entitled to relief on this claim in this proceeding.  It will, therefore, be recommended that Petitioner's Fourth Amendment claim concerning an unduly prolonged detention be denied.

V.  Voluntariness of Petitioner's Statement

Petitioner alleges that his statements to detectives were involuntary because the officer made a statement denigrating Miranda rights and thus undermined Petitioner's understanding of his rights, the detention was unduly prolonged because it lasted for three and one-half hours while Petitioner was handcuffed with hands behind his back in a patrol car without opportunity for food or sleep, the

9

detention included subjecting Petitioner to two in-field show-ups, the questioning was repeated and excessive, and Petitioner was upset and crying.  (FAP, doc. 22, 14-16.)

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as distinct from the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court

10

need not have cited Supreme Court precedent or have been aware of it "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see Williams, 529 U.S. at 407. An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410. A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even a strong case for relief does not render the state court's conclusions unreasonable. Id. To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

///

11

The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398. Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found unreasonable under the AEDPA. Wetzel v. Lambert, -U.S.-, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Pursuant to § 2254(d)(2), a habeas petition may be granted only if the state court's conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the

12

state court proceeding.  For relief to be granted, a federal habeas court must find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient.  Rice v. Collins, 546 U.S. 333, 340-42 (2006).

The last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Here, the CCA's decision was the last reasoned decision in which the state court adjudicated Petitioner's claims on the merits.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This Court will thus "look through" the unexplained decision of the CSC to the CCA's last reasoned decision as the relevant state-court determination.  Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

The deferential standard of § 2254(d) applies only to claims the state court resolved on the merits; de novo review applies to claims that have not been adjudicated on the merits.  Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

B.  The State Court's Decision

The decision of the CCA regarding the voluntariness of the confession is as follows:

While at the crime scene and in the back of Broomfield's
patrol vehicle, Burciaga told one of the deputies at the
scene that he wished to speak to the lead detective,
Grayson. Grayson walked to the patrol vehicle; Burciaga
was crying and stated he wished to talk. Grayson read
Burciaga his rights from a department-issued *Miranda* card.
Grayson asked Burciaga if he understood his rights.
Burciaga nodded in the affirmative and grunted a "yes."
Burciaga made a statement to Grayson. Grayson spoke with
Burciaga again, less than an hour after advising Burciaga
of his rights. After this conversation, Grayson directed
that Burciaga be transported to jail or the detectives'
office. Grayson spoke with Burciaga a third time at the
detectives' office.

"An appellate court applies the independent or *de novo*
standard of review, which by its nature is nondeferential,
to a trial court's granting or denial of a motion to
suppress a statement under *Miranda* insofar as the trial
court's underlying decision entails a measurement of the
facts against the law. [Citations.]" (*People v. Waidla*
(2000) 22 Cal.4th 690, 730.) In analyzing Burciaga's claim
of involuntariness, we note that it was he who initiated
the first conversation with Grayson, and Grayson advised
Burciaga of his *Miranda* rights prior to beginning that
first conversation.

Despite these facts, Burciaga contends that because (1) he
was subject to an unduly prolonged detention, (2) he was
emotional when he made his statement, (3) Grayson
denigrated his *Miranda* rights, and (4) he did not
expressly waive his rights, his statements were
involuntary and should have been excluded.

We previously discussed Burciaga's claim of an unduly
prolonged detention, determining the detention was not
unduly prolonged under the circumstances. The length of
Burciaga's detention was not such that his statement was
rendered involuntary. Burciaga states that he was detained
at around 9:25 a.m. and his initial statement to Grayson
was made at around 12:45 p.m., slightly over three hours
later. This amount of time was not of sufficient length to
render his statement involuntary, under the circumstances.
(*People v. Neal* (2003) 31 Cal.4th 63, 78, 81-82 [overnight
custody without access to food, water, toilet facilities,
or an attorney renders statement involuntary]; *People v.
Alfieri* (1979) 95 Cal.App.3d 533, 543, 545-546 [36 hours

of custody and 20 hours of interrogation renders statement involuntary].)

That Burciaga was crying or emotionally upset does not render his statement involuntary. (*People v. Whitson* (1998) 17 Cal.4th 229, 236, 240, 249-250.) Grayson's reference to *Miranda* warnings as "technical crap" clearly was inappropriate and the trial court so found. Grayson, however, did issue the standard *Miranda* warnings after Burciaga asked to speak with him and before allowing Burciaga to speak.

Burciaga also contends that he did not expressly waive his *Miranda* rights, although he acknowledges he implicitly waived his rights. Even if Burciaga's affirmative nod and a grunted "yes" constitute an implied waiver, an implied waiver is sufficient to waive *Miranda* rights. (*People v. Rios* (2009) 179 Cal.App.4th 491, 499, 507.)

Burciaga also contends his subsequent statements should be excluded because he was not readvised of his *Miranda* rights. If a defendant is subsequently interrogated, however, "readvisement is unnecessary where the subsequent interrogation is 'reasonably contemporaneous' with the prior knowing and intelligent waiver. [Citations.]" (*People v. Mickle* (1991) 54 Cal.3d 140, 170, 171 (*Mickle*) [readvisement unnecessary where the defendant twice received and twice waived *Miranda* rights 36 hours before].)

The length of time between Burciaga's initial statement to Grayson and his subsequent statements was not so lengthy as to reduce the effectiveness of his initial waiver, particularly where Burciaga was mentally alert, initiated the conversation, understood what was going on in the subsequent interrogations, and was interrogated by the same law enforcement official each time. (*Mickle, supra*, 54 Cal.3d at p. 170; *People v. Lewis* (2001) 26 Cal.4th 334, 386.)

People v. Burciaga, no. F057834, 2010 WL 4355509, at *8-*9.

C.   Analysis

In determining whether a statement or confession was involuntary and obtained in violation of the principles of due

process of law protected by the Fifth and Fourteenth Amendments, a court examines whether a defendant's will was overborne by the circumstances surrounding the giving of the statement or confession. Dickerson v. United States, 530 U.S. 428, 434 (2000).  A court considers the totality of all the surrounding circumstances, including the characteristics of the accused and the details of the interrogation.  Id.

Here, the questioning itself was not prolonged, and there was no extended deprivation of food or sleep.  Although Petitioner might have been emotional, there is no suggestion he lacked competence to waive his rights.  Although the officer denigrated Petitioner's Miranda rights, the Miranda advisement itself clearly informed Petitioner that anything he said could be used against him in court. Petitioner was not misled as to matters essential to understanding the significance of his rights or the consequences of giving a statement.  Cf. Moran v. Burbine, 475 U.S. 412, 423-24 (1986).

The giving of Miranda warnings followed by a voluntary and knowing waiver of those rights tends to show that a post-advisement statement was voluntary.  The prosecution bears the burden of demonstrating by a preponderance of the evidence that the defendant validly waived his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168 (1986).  A waiver must be 1) voluntary, or the product of a free and deliberate choice and not the result of intimidation, coercion, or deception, and 2) knowing, or "'made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 382-83 (2010) (quoting <u>Moran v. Burbine</u>, 475 U.S. at 421).

The trial court found Petitioner had voluntarily chosen to speak after having been informed of his rights and having indicated he understood his rights.  It is undisputed that it was he who voluntarily approached the officer and expressed a desire to make a statement.  It is clearly established that a waiver of <u>Miranda</u> rights may be express and formal, or implied through all the circumstances, including the words and conduct of the person interrogated.  <u>Berghuis v. Thompkins</u>, 560 U.S. at 383 (citing <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979)).  Specifically, a waiver may be implied through "'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" <u>Berghuis</u>, 560 U.S. at 384 (quoting <u>North Carolina v. Butler</u>, 441 U.S. at 373).  "Where the prosecution shows that a <u>Miranda</u> warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." <u>Id.</u> at 384.  Here, the state court reasonably determined that Petitioner had been informed of his rights and waived those rights by manifesting his choice to make a statement.

///

A valid waiver of <u>Miranda</u> rights generally results in a finding of voluntariness of a confession following the waiver.  <u>Missouri v. Seibert</u>, 542 U.S. 600, 608-09 (2004); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 433 n.20 (1984);  <u>DeWeaver v. Runnels</u>, 556 F.3d 995, 1003 (9th Cir. 2009), <u>cert.</u> <u>denied</u>, 130 S.Ct. 183 (2009).  The finding that the government had not engaged in any coercive conduct in the course of the interview is supported by the facts in the record and has not been contradicted or rebutted.  The state court's findings of fact underlying the issue of voluntariness are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).  <u>Cf.</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1444 (9th Cir. 1997).

In light of the totality of the circumstances, including Petitioner's conduct and the absence of coercive police activity, a finding that Petitioner's statement was "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment was not contrary to, or an unreasonable application of, clearly established federal law.  <u>See</u>, <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986).  Accordingly, it will be recommended that Petitioner's claim that his statements were involuntary be denied.

VI.   Failure to Instruct on Lesser Included Offenses

Petitioner requested an instruction on voluntary manslaughter on a theory of imperfect self-defense, but he did not affirmatively ask the trial judge to instruct on the lesser-included offenses of second degree murder or involuntary manslaughter.  (LD 1 at 50.)

Nevertheless, Petitioner alleges that he suffered a denial of his

due process rights when the state court failed to instruct the jury

on the lesser included offenses of second degree murder and

involuntary manslaughter.   (Doc. 22, 16-17.)

    A.   The State Court's Decision

The decision of the CCA on this claim is as follows:

Burciaga contends the trial court erred prejudicially when
it failed sua sponte to instruct the jury on lesser
included offenses of second degree murder and involuntary
manslaughter.

In a criminal case, the jury may convict the defendant of
either the charged offense or a lesser offense that is
necessarily included within the charged offense.
(Pen.Code, § 1159.) "'Under California law, a lesser
offense is necessarily included in a greater offense if
either the statutory elements of the greater offense, or
the facts actually alleged in the accusatory pleading,
include all the elements of the lesser offense, such that
the greater cannot be committed without also committing
the lesser.' [Citation.]" (*People v. Breverman* (1998) 19
Cal.4th 142, 154, fn. 5.)

A court must instruct sua sponte on general principles of
law that are closely and openly connected with the facts
presented at trial. (*People v. Wickersham* (1982) 32 Cal.3d
307, 323, disapproved on another point in *People v. Barton*
(1995) 12 Cal.4th 186, 200-201.) This sua sponte
obligation extends to lesser included offenses if the
evidence raises a question as to whether all of the
elements of the charged offense are present and there is
evidence that would justify a conviction of such a lesser
offense. (*People v. Ramkeesoon* (1985) 39 Cal.3d 346, 351.)
A criminal defendant is entitled to an instruction on a
lesser included offense only if there is evidence that, if
accepted by the trier of fact, would absolve the defendant
from guilt of the greater offense but not the lesser.
(*People v. Memro* (1995) 11 Cal.4th 786, 871.)

Burciaga argues that because he and Rubianes claimed they
went to Martin and Betts's home to purchase marijuana, not
to rob the two men, the trial court should have instructed

the jury sua sponte on second degree murder and involuntary manslaughter. The People contend the evidence of attempted robbery was overwhelming and there was no substantial evidence supporting any theory other than felony murder. We agree with the People.

"The requirement that courts give sua sponte instructions on lesser included offenses 'is based in the defendant's constitutional right to have the jury determine every material issue presented by the evidence. [Citations.]' [Citation.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) Contrary to Burciaga's contention, the evidence did not present an issue of second degree murder or involuntary manslaughter.

At trial the People proceeded only on a theory of felony murder. In Burciaga's pretrial statements to law enforcement, he admitted (1) there was a plan to take large quantities of marijuana from Betts and Martin; (2) he planned and did research before heading out, including visiting the victims' property nine months before the crime; (3) he did not want anyone to die; (4) he brought a gun and taser with him; and (5) Rubianes was to act as a diversion to get the property owners to come out of their house. When Burciaga and the others arrived at the property, Rubianes asked about real property in the area for sale. No inquiry about purchasing marijuana was made. When the SUV stopped on the property, Burciaga jumped out, brandishing a shotgun. Rubianes admitted that she found masks and bullets in the SUV after the attempted robbery. Burciaga specifically admitted in his pretrial statements that he and the others had not gone to the Betts and Martin residence to purchase marijuana.

When the People establish that a defendant killed a victim while committing a felony enumerated in Penal Code section 189, including robbery or attempted robbery, the killing is deemed to be first degree murder as a matter of law. (*People v. Mendoza* (2000) 23 Cal.4th 896, 908-909 (*Mendoza*).) The evidence is overwhelming that Burciaga and his cohorts (1) planned to take marijuana by force, (2) came armed with weapons and prepared to use force, and actually used force, (3) had supplies with them to facilitate a robbery, such as masks, a taser, and the guns, and (4) made no effort whatsoever to purchase any marijuana, as opposed to taking marijuana forcibly.

20

1   Consequently, the evidence was overwhelming that the
2   killing occurred during an attempted robbery.

3   Even if Burciaga and the others did not intend to kill
    anyone during the planned robbery, the killing is still
4   felony murder. The jury was instructed, correctly, that a
    person may be guilty of felony murder, even if the killing
5   was unintentional, accidental, or negligent.

6   The jury was instructed, however, on Burciaga's theory of
7   defense-that he went to the property to purchase
    marijuana. The jury was instructed that if the jury
8   believed Burciaga had gone to Martin and Betts's home to
    purchase marijuana, he did not have the mental state
9   required for robbery. If the jury had a reasonable doubt
    as to whether Burciaga had the requisite mental state for
10  robbery, the jury was instructed to find him not guilty of
11  that crime.

12  Virtually the only evidence that Burciaga and the others
13  may have gone to Martin and Betts's property to purchase
    marijuana was Rubianes's testimony at trial that she drove
14  to the property in order to purchase marijuana. She did
    not know Burciaga and the others had planned a robbery.
15  This evidence is slight in light of Rubianes's own conduct
    at the scene of the crime in failing to ask about a
16  marijuana purchase and the overwhelming evidence that
17  Burciaga and the others planned and were prepared to use
    force to rob Martin and Betts of the marijuana.
18
19  When the evidence "points indisputably to a killing
    committed in the perpetration of one of the felonies"
20  enumerated in Penal Code section 189, a trial court need
    not instruct a jury on offenses other than first degree
21  felony murder. (Mendoza, supra, 23 Cal.4th at pp. 908-
    909.) If Burciaga had the requisite mental state required
22  for robbery, the killing was felony murder; if he did not,
23  the killing was not felony murder and the jury was so
    instructed. Thus, if the jury found Burciaga lacked the
24  requisite intent for robbery, he would not have been found
    guilty of felony murder.
25
26  We conclude the trial court did not err in failing to
    instruct the jury on second degree murder or involuntary
27  manslaughter.

28  People v. Burciaga, no F057834, 2010 WL 4355509, at *10-*12.

21

B.  <u>Analysis</u>

When a conviction is challenged in a proceeding pursuant to 28 U.S.C. § 2254 based on jury instruction error, a district court's review extends only to federal issues; a claim of jury instruction error that is based solely on state law does not state a claim cognizable in federal habeas corpus proceedings.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991).  A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3).

This basic, limiting principle is applicable in the present case, where the target of Petitioner's claim of unfairness is the state court's decision upholding the trial court's failure to instruct <u>sua sponte</u> on a lesser included offense.  Although the Supreme Court has held that the failure to instruct on lesser included offenses can constitute constitutional error in capital cases, <u>Beck v. Alabama</u>, 447 U.S. 625, 638-46 (1980), it has reserved decision on whether such an omission in non-capital cases constitutes constitutional error, <u>id.</u> at 638 n.7.

Accordingly, there is no clearly established federal law within the meaning of § 2254(d) concerning a state court's rejection of a claim that Sixth and Fourteenth Amendment rights in a non-capital case were violated by a failure to instruct on a lesser included offense.  Thus, such a claim is not cognizable in a proceeding

22

pursuant to 28 U.S.C. § 2254, and it should be dismissed.  <u>Windham</u> <u>v. Merkle</u>, 163 F.3d 1092, 1106 (9th Cir. 1998).

However, a defendant's right to adequate jury instructions on the theory of the defense case might present an exception to the general rule.  <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9th Cir. 1984).  Under the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause and Confrontation Clause of the Sixth Amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense.  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986); <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984).  The Supreme Court has characterized its cases as not recognizing a generalized constitutional right to have a jury instructed on a defense available under the evidence under state law.  <u>Gilmore v. Taylor</u>, 108 U.S. 333, 343 (1993).  However, when habeas is sought under 28 U.S.C. § 2254, a failure to instruct on the defense theory of the case constitutes error if the theory is legally sound, evidence in the case makes it applicable, and it fits the defense theory of the case.  <u>Clark v. Brown</u>, 450 F.3d 898, 904 (9th Cir. 2006); <u>Solis v. Garcia</u>, 219 F.3d 922, 928-29 (9th Cir. 2000), (per curiam), <u>cert. den.</u> 534 U.S. 839 (2001).  Where the evidence does not support the giving of the instruction, there is no constitutional violation.  <u>See</u> <u>Menendez v. Terhune</u>, 422 F.3d 1012, 1028-30 (9th Cir. 2005) (no constitutional violation when the state trial court refused to instruct on imperfect self-defense that was not supported by sufficient evidence); <u>Solis v. Garcia</u>, 219 F.3d at 929 (no constitutional error in refusing to give an instruction not supported by evidence).  In addition, for a habeas corpus petitioner to be entitled to relief, any instructional error must have had a

substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 622, 637 (9th Cir. 1993).

Here, the state court's finding that the evidence was insufficient to warrant an instruction is entitled to a presumption of correctness on federal habeas review. <u>Menendez v. Terhune</u>, 422 F.3d at 1029. However, even if the claim is reviewed <u>de novo</u>, there was not sufficient evidence from which a jury could reasonably have concluded that Petitioner intended only to buy marijuana. Further, it does not appear that Petitioner suffered any prejudice. The jury was instructed that if Petitioner lacked the intent required for robbery, the killing was not felony murder. Thus, the jury was instructed on Petitioner's theory of the defense. Cf. <u>Beardslee v. Woodford</u>, 358 F.3d 560, 576 (9th Cir. 2004). However, the jury necessarily rejected the testimony of Rubianes that Petitioner's purpose in being at the scene was to buy marijuana.

Accordingly, it will be recommended that the Court deny Petitioner's claim concerning instructions on the lesser included offenses of second degree murder and involuntary manslaughter.

VII.   <u>Ineffective Assistance of Counsel</u>

Petitioner alleges he suffered a violation of his right under the Sixth and Fourteenth Amendments to the effective assistance of counsel when his counsel conceded that Petitioner was the shooter of the fatal shot. Petitioner contends that there was evidence sufficient to raise a reasonable doubt because he had stated he had run after the first shot, there was evidence that the fatal shot was shot from a location different from the place Petitioner had stated he had been, and Martin had both a motive to shoot Betts (Martin was

the beneficiary under the victim's will) and the opportunity (a large arsenal, much of which had not been examined by law enforcement).  Petitioner relies on a letter from a co-perpetrator's counsel to the effect that some jurors who had contacted him adverted to a possibility of a reasonable doubt that Petitioner was the shooter.  (Doc. 22 at 18-22.)

A.  The State Court Decision

The decision of the CCA on this issue is as follows:

Burciaga claims he received ineffective assistance of counsel because defense counsel (1) conceded Burciaga fired the fatal shot that killed Betts, and (2) relied upon an inapplicable defense, specifically, imperfect self-defense. We disagree.

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To establish constitutionally ineffective assistance of counsel, " 'a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant.' " (*People v. Lewis* (2001) 25 Cal.4th 610, 674.) The burden of proving ineffective assistance of counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.)

Defense counsel argued (1) the People had failed to prove an intent to rob, and (2) Burciaga and the others went to Martin and Betts's home to purchase marijuana. Defense counsel also argued that Burciaga shot Betts because Betts pointed a gun at him and there was gunfire. Defense counsel specifically stated Burciaga did not shoot Betts in order to steal marijuana and that Betts pursued Burciaga as he attempted to flee.

Defense counsel's argument was reasonable in light of the state of the evidence. Martin testified that Burciaga was the one holding the shotgun. In his first interview with Grayson, Burciaga stated that he shot back when one of the owners came out of the house and started shooting. In his

second interview with Grayson, Burciaga first denied
shooting Betts and then stated that he shot to scare
Betts, not to kill him. Burciaga also stated in the second
interview that Betts shot first and that killing Betts was
an accident.

The physical evidence established that Betts died from a
shotgun wound. Shoe prints bearing a herringbone pattern,
the same as found on the bottom of Burciaga's shoes when
arrested, were found in the dirt near a spent shotgun
casing where Betts was shot.

Defense counsel's argument to the jury that Betts was the
shooter was wholly consistent with Burciaga's statements
to law enforcement and the physical evidence in the case.

We additionally reject Burciaga's claim that defense
counsel argued an inapplicable defense. Burciaga
misconstrues defense counsel's argument. Defense counsel
did not assert imperfect self-defense by one who was a
felon or aggressor. Defense counsel argued that Burciaga
was not at Martin and Betts's to rob them but to purchase
marijuana and that Betts was the aggressor who first fired
shots. Burciaga fired only in response to shots being
fired at him.

Courts repeatedly have rejected claims of ineffective
assistance of counsel in other cases involving concessions
made by defense counsel in closing argument where the
incriminating evidence was strong and defense counsel
offered some other choice in the defendant's favor. We do
so here as well. (See, e.g., *People v. Bolin* (1998) 18
Cal.4th. 297, 334-335 [rejecting a claim of ineffective
assistance of counsel related to defense counsel's
concession of some measure of culpability as a valid
tactical choice given the overwhelming evidence of the
defendant's guilt]; *People v. McPeters* (1992) 2 Cal.4th
1148, 1186-1187 [rejecting a claim of ineffective
assistance of counsel related to defense counsel's
concession in closing argument that the defendant had been
present at the scene of the crime, repudiating the
defendant's alibi testimony]; see also *People v. Wade*
(1988) 44 Cal.3d 975, 988 ["In light of the overwhelming
evidence of his client's guilt, trial counsel had little
choice but to candidly acknowledge guilt, concede the
heinous nature of the offense, and concentrate instead on
convincing the jury of the legitimacy of defendant's

26

mental defenses"]; *People v. Ratliff* (1986) 41 Cal.3d 675, 697 ["Counsel's tactical decision to argue a particular personal view of the evidence, indicating that his client may have committed only a lesser offense, is not akin to pleading guilty to that offense"]; *People v. Jackson* (1980) 28 Cal.3d 264, 293 ["'[G]ood trial tactics demanded complete candor' with the jury"].)

People v. Burciaga, 2010 WL 4355509, at *12-*13.

        B.  Analysis

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Premo v. Moore, - U.S. -, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

With respect to this Court's review of a state court's decision concerning a claim of ineffective assistance of counsel, the Supreme Court has set forth the standard of decision as follows:

To establish ineffective assistance of counsel "a
defendant must show both deficient performance by counsel
and prejudice." Knowles v. Mirzayance, 556 U.S. --,--,129
S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). In addressing
this standard and its relationship to AEDPA, the Court
today in Richter, -- U.S., at -- - --, 131 S.Ct. 770,
gives the following explanation:

> "To establish deficient performance, a person
> challenging a conviction must show that
> 'counsel's representation fell below an
> objective standard of reasonableness.'
> [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052].
> A court considering a claim of ineffective
> assistance must apply a 'strong presumption'
> that counsel's representation was within the
> 'wide range' of reasonable professional
> assistance. Id., at 689 [104 S.Ct. 2052]. The
> challenger's burden is to show 'that counsel
> made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.' Id., at 687
> [104 S.Ct. 2052].

> "With respect to prejudice, a challenger must
> demonstrate 'a reasonable probability that, but
> for counsel's unprofessional errors, the result
> of the proceeding would have been different.'
> ...

> " 'Surmounting Strickland's high bar is never an
> easy task.' Padilla v. Kentucky, 559 U.S. --, --
> [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010).
> An ineffective-assistance claim can function as
> a way to escape rules of waiver and forfeiture
> and raise issues not presented at trial [or in
> pretrial proceedings], and so the Strickland
> standard must be applied with scrupulous care,
> lest 'intrusive post-trial inquiry' threaten the
> integrity of the very adversary process the
> right to counsel is meant to serve. Strickland,
> 466 U.S., at 689-690 [104 S.Ct. 2052]. Even
> under de novo review, the standard for judging
> counsel's representation is a most deferential
> one. Unlike a later reviewing court, the
> attorney observed the relevant proceedings, knew
> of materials outside the record, and interacted

with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' _Id._, at 689 [104 S.Ct. 2052]; see also _Bell v. Cone_, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); _Lockhart v. Fretwell_, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. _Strickland_, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of _Strickland_ was unreasonable under § 2254(d) is all the more difficult. The standards created by _Strickland_ and § 2254(d) are both 'highly deferential,' _id._, at 689 [104 S.Ct. 2052]; _Lindh v. Murphy_, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, _Knowles_, 556 U.S., at ----, 129 S.Ct., at 1420. The _Strickland_ standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under _Strickland_ with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied _Strickland's_ deferential standard."

_Premo v. Moore_, 131 S.Ct. at 739-40 (quoting _Harrington v. Richter_, 131 S.Ct. 770 (2011)).

Here, defense counsel's argument was reasonable in light of the overwhelming evidence that Petitioner shot Betts, including Martin's testimony that Petitioner had a shotgun, Petitioner followed Martin to the house and pointed the shotgun at him, and the shotgun blast came from the side of the house near the door near where Betts

stood; Petitioner's own admissions that he was the shooter;[2] physical

evidence of a trail of shoeprints with patterns similar to the

patterns of Petitioner's and Mendez's shoes heading from the scene

to the point at which Sergeant Bump made contact with Petitioner,

the location of the .12 gauge shotgun with no stock discovered along

the way on top of fresh grass under a tree limb, discovery of a

spent .12 gauge shotgun casing and a herringbone shoeprint within a

foot of each other about ten feet from the southeast corner of the

house, and Petitioner's having cuts on his chin; law enforcement

opinion testimony that a comparison of the herringbone shoeprints to

Petitioner's shoes showed similarity and/or demonstrated that

Petitioner made the shoe impressions; and firearms expert opinion

testimony that the shotgun casing found behind the victim's home was

fired from the shotgun found on the shoeprint trail.

In light of the strong evidence from multiple sources that

supported a conclusion that Petitioner was the shooter, a fairminded

jurist could conclude that defense counsel's actions were

reasonable, and they did not undermine confidence in the outcome of

the proceeding or cause prejudice to Petitioner.  Accordingly, it

will be recommended that Petitioner's claim of the ineffective

assistance of counsel be denied.

///

///

---

[2]   In the first interview, Petitioner stated that a property owner came out of the house and started shooting; Petitioner returned a shot, and his shotgun recoiled, hitting him on his lip and cutting his chin; Petitioner discarded his twelve-gauge shotgun in the woods. (LD 2 at 4-5.)

In the second interview, Petitioner denied shooting Betts and said that Betts came out "blasting"; however, Petitioner admitted that he shot to scare Betts, not to hit him.  Later Petitioner said that he had killed someone for nothing, and that if he killed Betts, it was an accident.  (Id.)

VIII.  <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  <u>Id.</u>  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

IX. <u>Recommendations</u>

In accordance with the foregoing analysis, it is RECOMMENDED that:

1) The first amended petition for writ of habeas corpus be DENIED;

2) Judgment be ENTERED for Respondent; and

3) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

///

///

*Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 24, 2015**                              **/s/ Sheila K. Oberto**
                                                                    UNITED STATES MAGISTRATE JUDGE

33